Good morning, your honors. May it please the court. My name is James Spertus, and I'm counsel for defendant Appellant Hai Waknine. We've appealed from Judge Manuel Real's denial of Mr. Waknine's motion to withdraw his guilty plea, filed prior to sentencing and heard on July 1st, 2009. The transcript from that hearing, which is contained in full in the government's excerpt of record and excerpted in defendant's excerpt of record, establishes that Judge Real applied the wrong standard of law, and he applied clearly erroneous facts and denied the motion. And in light of those errors, Mr. Waknine submits that Judge Real abused his discretion in denying the motion to withdraw the guilty plea. I'd like to know more specifically what you intended to use these tapes for. There's a little inconsistency in some of the documents on that subject. There's talk about cross-examination, and then there's talk about corroboration. Did you intend to play these tapes to the jury, or you're just going to use them for your own education to conduct a cross-examination, or what? They would have been used for both purposes. There were 22 hundred… You're not very specific about those allegations, I don't believe. Well, we do. We alleged that it would take a certain amount of time to translate them, a long time, with the assumption that they had to be translated to be used for whatever purpose you had in mind. But I don't see any specific argument about what you're going to use them for. We would have used them to bolster Mr. Waknine's direct testimony that he was under duress when he did the overt action. So you're going to play them for the jury, is that right? Yes. Yes, Your Honor. Oh, okay. And there were 22 hundred conversations produced on the eve of the trial. Mr. Waknine made five. Well, I know all that, but I'm asking you specifically what you're going to use. You say you're going to play them for the jury, and another subject I'd like to know more about is in no place does it say Mr. Waknine is not fluent in Hebrew here. The calls would have to be translated to be used. So Mr. Waknine did speak Hebrew, but Mr. Waknine's counsel had no ability to play a Hebrew telephone conversation in front of the jury. In fact, the law would be that the transcript... No, but he could conduct a cross-examination, presumably, if Mr. Waknine told him what was contained in the tapes. Right, but there would be no ability to play the call or present a transcript, more precisely, to show that the testifying witnesses were lying. I mean, Mr. Waknine made it quite clear far in advance of trial that he wanted to proceed with a duress defense. In the middle of trial, it became quite clear the only evidence that would support that defense would be his own testimony. And there were five distinct efforts to try to get the trial date continued a reasonable amount of time. It wasn't even a lengthy request for a continuance. The calls were produced by the government in May 2006 for a trial that began on June 6, 2006. There was a joint request, but with the government joining in the request to continue the trial initially until August. Judge Riel denied that. That stipulation was followed on March 27, 2006 by an unopposed application to continue the trial, which was denied. At this time, the calls still had not been produced. Then on May 16, 2006, there was an oral motion for a continuance because the calls still had not been produced in advance of trial. Brady material. I mean, clearly usable, discoverable material. Have these tapes ever been translated at any point? Well, by the government. And the horror was reading the second superseding indictment that was filed in 2008 that contained express allegations in the same case number. It was superseding Mr. Walkman's indictment with the second indictment that cited to those calls as evidence of the ongoing Rico enterprise. And those calls included the death threat calls that Mr. Walkman wanted to use a trial in his defense. Did the government ever provide you with the transcripts? No. Translations. Do you have a right to them? Are you required to go get your own translator? I don't believe we have a right to them now because Mr. Walkman pled guilty. And I think our rights ended with the guilty plea. But had the trial been continued, we would have had a right to them. So you've never seen the tapes or never seen the transcript of the tapes? No. Except as they were reprinted in the second superseding indictment. Yeah. The printed clauses I've seen. But the underlying evidence in the second superseding indictment has not been made available. And I should know this because I think it's in the record. Who is indicted in the second superseding indictment? Well, it is the indictment itself is in the record. And there are several people who are still pending trial. That's an ongoing case. And the importance of that is that it's really wouldn't constitute any prejudice to the government to allow Mr. Walkman to withdraw his guilty plea and join the defendants in this ongoing case, in the second superseding indictment. It's not like the case is over. They would just add Mr. Walkman to the second superseding. He's not in it. His actions are described. He is in it. He's in it as a co-conspirator in the second superseding indictment, even though he's not a defendant. He's an unnamed conspirator at this point? Yes. And calls involving Mr. Walkman are included in the second superseding indictment. So they'd need a third one, but they'd just bring him in and name him as a defendant then in the third superseding indictment. But it would be more of a ministerial task to get him in. It's not going to require retrial only for Mr. Walkman. And has the trial gone forward under the second superseding indictment? It has not. I think the defendants are being extradited, which is what's caused the delay. I see. So there's – it's a live case, and I don't believe that it would cause any prejudice to the government. And is this case under the second superseding indictment also in front of Judge Reel? Yes. Yes. I cannot capture in words the experience that's captured on the transcript of what it's like to go into a courtroom and have no opportunity for meaningful discussion. The first remand in this case was based on the fact that Judge Reel didn't even allow the government to speak at his first sentencing, and the government had a lot to say. And so the case was remanded and would be heard. The motion for withdrawal of the guilty plea was made before Judge Reel. The transcript, which is in the record, shows that Judge Reel applied the knowing and voluntary standard that he really just denied any meaningful opportunity to discuss whether there was a fair and just reason. He felt the case – the second superseding indictment in this case was unrelated to Mr. Walkman, even though it names Mr. Walkman as a conspirator. It was just a very difficult experience. Mr. Kenner was the trial attorney at that time, and the transcript really shows a heroic effort, trying to be heard just to create the record so that it could be reviewed by Your Honors. It was a clear case of the wrong legal standard being applied to the wrong facts, which as a matter of law constitutes an abuse of discretion. And then the last point I want to address is the delay argument the government makes in its briefs. It's more of an academic and technical argument, but the government says that Mr. Walkman is trying to withdraw a plea three years after he entered it. And although mathematically that's true, there was no jurisdiction in the district court to even file a motion to withdraw the guilty plea between the time the second superseding indictment was filed and then the case was remanded. And how much time elapsed between the issuance of the mandate on appeal to your making the motion to withdraw the guilty plea? The mandate issued in September 2009 and the – I'm sorry, 2008, and approximately eight months left in the motion for a new trial was filed in June 2010. Well, there were times during that period when – I'm sorry, June – You could have brought up this matter. Yes, and if I could just correct an error, I'm sorry. The mandate returned September 10, 2008, I said 2009, and the motion to withdraw the guilty plea was heard in July 1, 2009. So it was 10 months. Are you telling us the first time you had an opportunity to raise this matter was at the resentencing? Yes. Well, the first court hearing that happened after the remand was at the July 1st hearing. During that time, there was a lot of discussion between trial counsel, Mr. Kenner, and the government trying to resolve this. And the goal, I believe, was to go into sentencing in front of Judge Real with a stipulated request for a sentence. Those negotiations fell apart. But there was no activity. It wasn't that the government was advancing with some case to its detriment while Mr. Wachnine stood by and tried to capitalize on delay. That's not at all what happened. It was basically dead. The United States is trying to extradite the defendants for the second superseding case, and Mr. Wachnine is trying to negotiate with the government so that he can join those defendants and proceed. Well, but the three years is three years, is it not? You're saying your answer to that apparently is that you didn't have any opportunity during the three years to raise this issue. Right. The three years, for basically two years and three months, there was no opportunity. The moment the mandate returned, the reason why there was no opportunity prior to the appeal was because there was no known claim, for one, and two, because the superseding indictment had not yet been returned in 2008, and so the knowledge of the appellate issue wasn't crystallized. And then separately, there was a plea agreement originally that was vacated. I mean, Mr. Wachnine was seeking to vacate and relieve himself of the obligation in that plea agreement. So even if he had somehow imagined this issue, because certainly when he was trying to get the trial continuance, he was aware that he was missing evidence. He didn't know what evidence. But even if he had imagined that it was as it turned out to be, he had waived the appellate right at that time, and by filing the Notice of Appeal, divested the District Court of Jurisdiction. So for two years and three months, he had no ability to file this motion to withdraw his guilty plea. And then there was a short delay while he was negotiating with the government, trying to resolve issues, and then he filed it. But there was no prejudice from that short nine-month delay. All right. Thank you, Counsel. Thank you. Ann Vojts. May it please the Court. My name is Ann Vojts, and I represent the government in this case. If I might first address the defendant's point about the standard of review. As an initial matter, I think it's not fair to say that the Court applied the incorrect standard. I think when you look at his comment about free and voluntary, it came in the context of a discussion with counsel about why this issue hadn't been raised prior to the first sentencing, why it hadn't been raised on appeal. And defense counsel said, well, it couldn't be raised on appeal because we had used it as part of our plea agreement, and we could only afford the sentence. And I think the Court's comment about the free and voluntariness of the plea, and then the waiver, I think, was associated as part of that. But given that there's no standard. What standard did he apply? Did he ever state the correct standard? He did not state what standard he was using. But given that the only standard that was discussed in front of the Court was the fair and just reason standard, I think there's no reason to assume. Well, but usually judges state the standard they're applying when they make rulings, and he only referenced that one standard. I agree it would have been helpful if the Court had been more detailed in its findings. But under Ortega-Escanio, this Court can affirm on any basis supported by the record, even if it concludes, and the government disproves this, that the Court had misapplied the law. I have to say I'm sympathetic to the government in the sense that this is a mess really not of your own making. You tried really you and defense counsel tried to get the thing postponed, and the district judge wouldn't let you do it. And therefore, here we are. I mean, it's taken us a while to get here, but this really is a consequence of the district judge refusing both the requests from both sides to wait until we got those tapes translated. Although whether this is a case where this is something that, for example, that could have been raised on appeal initially, the defendant made a choice. He went to trial. He had raised the issue on mandamus. This Court denied it. He made the choice at trial to plead guilty and not preserving the right to challenge this issue on his initial appeal. The only thing he challenged on the first appeal was the sentence that was imposed. But he didn't know what was – I mean, he didn't know until 2008, when you filed the second secret seating indictment, precisely what was in those tapes. And to this day, he doesn't know. Well, I think – He knows what he knows from his own. I mean, he could have testified, but he had nothing to back up his testimony. Well, if I may note, this is where I think the belated filing of the motion prejudiced our ability to make a case. You know, I don't really think it was belated when the district court didn't even have jurisdiction for all that time. I think, given that it was filed – the motion itself was filed the day of the resentencing. Well, is your opposing counsel incorrect that you were in negotiations? When I spoke to the prosecutor who handled this before sentencing, he said that the  Did you ask him about – were there negotiations about the sentence to be imposed and agreeing on the sentence upon remand after, of course, the Ninth Circuit had reversed the sentence imposed by Judge Rill? I did not. When I had asked him – Well, I think that's pretty relevant, is what was going on. Because typically, parties will hold off doing a motion while they're in negotiations with the government to see if there's another way to resolve it. Maybe a more favorable sentence. Not getting that, then you bring your motion to withdraw the guilty plea. But if you're thinking you're going to get a sentence that would be more favorable than if you withdrew your guilty plea and went to trial, you might kind of want to pursue that avenue first. Well, I think in this case, what we're faced with is sort of a lack of evidence on the defendant's part. The motion that they submitted didn't include a declaration from defendant or defense counsel, for example, about what they knew or when they knew it. They're just sort of unsworn statements about what was known. It is undisputed, based on their own papers, that they had the liner notes that indicated some kind of – Well, isn't it undisputed that the district court had in front of it the second superseding indictment, which contained a lot of the material? It did. And as we noted, there is a representative of the court, a number of those – the conversations that were specifically identified by the defendant in their opening brief were, in fact, not from the Israeli intercepts but from – I'm sorry, you're going to have to speak up. I can't hear. I apologize. A number of the conversations of the 17 conversations referenced in the opening brief were, in fact, not from the Israeli intercepts but from other intercepts. Okay. So let me just say this. So I, like Judge Fletcher, kind of thought, you know, when I was looking at this case, that the government was being good guys here. They were. They did, let's see, stipulate at a point to continue the trial. And then on March 28, when Waknin filed the unopposed motion, you didn't oppose it, saying, you know, I want to assert this duress defense. These documents are really important to my duress defense. You didn't oppose that. You were making efforts to get the documents. You knew that once you got them, you'd be turning them over under Brady or what, you know, your obligations. So all of that, I think, is, you know, very laudable and commendable by the government. What I don't get right now is why you're pushing so hard to hold them to the guilty plea made at a time when certainly there was a lot of pressure to make. I think that's why actually Judge Rill used the free and voluntary standard, because there really was a lot of pressure on him. He didn't have the corroboration he needed. He didn't have the tapes. He couldn't really document his duress defense. So he made, he entered in that plea. And so Judge Rill says, well, that was free and voluntary, only not the correct standard. What I don't understand is why don't you just name him to the second superseding indictment and let him have a fair trial? I think it's a function, because it isn't simply, there's a question of when that second superseding indictment will actually ever proceed to trial. It also does include some claims about drug trafficking and other things that are unrelated to what might be a problem to try those as well. There's many ways I think the government could get around that problem easily, especially since that case hasn't even proceeded to trial. But at the same time, the government is also expanding. Of course, you'd have to have a reasonable judge, wouldn't you? To address the issue of prejudice, there is the fact that the government, in fact, had brought witnesses over and had gone to considerable expense to begin the first trial, which was then shortcut by the defendant's guilty plea. We then went through another appeal. We went through resentencing, and now we're going through another appeal. So there have been a considerable number of efforts that I think resulted in wasted expenditure for the government. And so that is part of the prejudice. I think about the guy's trial preserving I don't know how many years in prison following this without ever having been able to put on his defense. I think, again, the question is when you look at the motion, whether it was sufficient to establish what he wanted. And under Showalter, the question is not, you know, the question is what he actually had available. A number of the conversations he references, he himself was a participant in, and he could have said to his counsel, again, this is all sort of black box because none of this was explained in the motion or supported by way of declaration, hey, I know that I had these conversations where Ben Harash or this other person threatened me. Let's try and look for those in the interception. There's some sense that this supported evidence of duress. And rather than pursue that issue or raise it independently on appeal, it's all through the venue of this motion to withdraw his guilty plea. Is Mr. Wachdein serving a sentence right now, or what's the bail status? I believe he is currently serving his sentence, but I will. Yes, he is. He is currently serving his sentence. If I can make one final point with respect to the, just to correct something that I think defense counsel inadvertently suggested. The government did, as soon as we received the Israeli intercepts from the Israeli government, we did turn those over immediately to the defense. This is not a case where. No, I think he said that. It's just that they couldn't translate them fast enough. Right. So they had the liner notes, which they had received in March. They knew of the conversations to which the defendant himself had been a participant, and I think that they knew that there were likely materials, other additional conversations in there that could be useful. So I think this is a different case. I think this is sort of akin to Showalter where there's a question where you know witnesses exist, even if you don't necessarily know what they might say precisely, as opposed to Garcia where they didn't even know that the witness in that case existed. If there are no further questions, I'd be happy to submit on that. Thank you, Your Honor. Thank you. Your Honor, very briefly, just to emphasize the Court's point, the government was doing the right thing during the first of the three efforts to get this trial date continued, and they were good prosecutors who recognized their Brady obligations. Then on May 18, 2006, Mr. Walkenau filed a written motion for continuance, backed by declarations from Hebrew language interpreters that provided evidence of how much time would reasonably be necessary to translate these calls, and that was denied. And then that was all before the tapes were even provided. Then on May 19, 2006, the government finally provided the intercepts. So I think that factual basis emphasizes that with evidence in front of Judge Reel, with both parties asking for more time, with the May 19 presentation of 2,200 calls, Mr. Walkenau certainly could not proceed to trial in June 6. Well, the government asserts you could have used the liners. I'm not quite certain I understand what the liners were and how you could have used them. They're essentially worthless. What they are are some evidence of who the speakers are with some agent's abbreviated summary, in a matter of a few words or, you know, ten words or so, what the call generally pertained to. So if the agent is investigating some concept like, you know, Defendant A is speaking to Defendant B, he'll cite to this call as evidence of contact because they're talking about a grocery store or something. If, in fact, that call contains death threats against Mr. Walkenau and that the agent doesn't consider relevant, then that won't be in the line notes. The line notes are more of an index, but they're not any substantive analysis. Thank you. All right. Thank you, counsel. United States v. Walkenau.
judges: Cudahy, Wardlaw, Fletcher W.